# Exhibit A

# Plan of Liquidation

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
(SYRACUSE DIVISION)

------------------------------------------------------------x

In re:                   :

                       :

THE NEW YORK CHOCOLATE     :     Case No. 10-30963 - (MCR)
& CONFECTIONS COMPANY     :     Chapter 11 Case

                       :

Debtor.                :

------------------------------------------------------------x

## DEBTOR'S PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

*McDERMOTT WILL & EMERY LLP*
*340 Madison Avenue*
*New York, New York 10173-1922*
*Telephone: (212) 547-5400*
*Facsimile: (212) 547-5444*
*Counsel for the Debtor and Debtor in Possession*

Dated:     New York, New York
          July 6, 2010

# INTRODUCTION

The New York Chocolate & Confections Company ("New York Chocolate"), a Delaware corporation, as a debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, hereby proposes the following plan of liquidation (the "Plan") pursuant to sections 1121(a) and 1121(e) of the Bankruptcy Code. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's history, business, properties, certain post-petition events, issues which may affect estimated distributions, and for a summary and analysis of the Plan and certain related matters. All holders of Claims or Equity Interests against the Debtor entitled to vote on the Plan are advised to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

# ARTICLE I

# DEFINED TERMS

As used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.01 *Administrative Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Case allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor, as a debtor in possession, during its Chapter 11 Case and (d) any Fee Claim to the extent allowed by Final Order.

1.02 *Administrative Claim Bar Date* means September 16, 2010.

1.03 *Allowed* means, with reference to any Claim, (a) any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim as to which no objection to allowance has been timely interposed in accordance with section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, pursuant to section 8.02 of this Plan, or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (c) any Claim expressly allowed pursuant to this Plan.

1.04 *Allowed County Secured Claim* means the Secured Claim of the County against the Debtor pursuant to the County Loan Agreement, which is allowed in the amount of $421,867.20, as of the Effective Date.

2

1.05    *Avoidance Actions* means, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims and demands whatsoever, whether known or unknown pursuant to sections 510, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or equivalent provisions of applicable non-bankruptcy law.

1.06    *Bankruptcy Code* means title 11 of the United States Code as now in effect or hereafter amended, as applicable to the Chapter 11 Case.

1.07    *Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of New York in which the Chapter 11 Case was commenced on April 14, 2010, or any other court with jurisdiction over the Chapter 11 Case.

1.08    *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules of the Court, as now in effect or hereafter amended.

1.09    *Business Day* means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.10    *Cash* means legal tender of the United States of America.

1.11    *Chapter 11 Case* means the Debtor's chapter 11 case pending in the Bankruptcy Court.

1.12    *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code against the Debtor.

1.13    *Class* means a category of holders of Claims or Equity Interests.

1.14    *Collateral* means any property or interest in property of the estate of the Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.15    *Comité* means the Comité de Gestion de la Filière Café-Cacao, a quasi governmental agency formed under the laws of the Republic of Côte d'Ivoire.

1.16    *Confirmation Date* means the date on which the Clerk of the Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.17    *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.18    *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.19    *County* means the County of Oswego.

3

1.20 *County Loan Agreement* means the loan agreement between New York Chocolate and Operation Oswego County, Inc., as subrecipient of the County, dated April 21, 2005, in the principal aggregate amount of $850,000.

1.21 *Debtor* means the above-captioned debtor and debtor in possession.

1.22 *DIP Lender* means the Comité, in its capacity as lender under the Debtor-in-Possession Loan Agreement dated May 19, 2010 between the Debtor and the Comité.

1.23 *DIP Loan Claim* means the administrative and secured Claims of the Comité arising under the debtor-in-possession financing facility the Comité provided to the Debtor pursuant to the *Final Order (I) Granting Emergency Motion For Order Under 11 U.S.C. §§ 105, 364(c)(1), (2) and (3), and 364(e), Fed. R. Bankr. P. 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-3, (II) Authorizing Debtor to Obtain Postpetition Financing on Superpriority and Secured Basis, and (III) Granting Final Relief* entered by the Bankruptcy Court on May 13, 2010, and any extensions, amendments, additions or other modifications thereto.

1.24 *Disbursing Agent* means the Debtor or such other entity designated by the Debtor as the Disbursing Agent for the purpose of receiving and making distributions to holders of Allowed Claims or Equity Interests as provided in this Plan, without the necessity of posting a bond.

1.25 *Disclosure Statement* means the written disclosure statement (including all schedules to such disclosure statement) that relates to the Plan, as the same may be amended, modified or supplemented from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.26 *Disputed Administrative, Priority and Secured Claim* means any Administrative, Priority and Secured Claim (a) which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or by an order of the Bankruptcy Court, (b) which is disputed under the Plan, (c) as to which the Debtor has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, or sections 8.02 and 8.04 of this Plan, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, (d) any Administrative, Priority or Secured Claim, proof of which was filed in an amount greater than the amount reflected for such Administrative, Priority and Secured Claim on the Schedules and for which the time to file an objection has not yet expired, (e) any Administrative, Priority or Secured Claim, proof of which was filed but which was not listed on the Schedules and for which the time to file an objection has not expired and (f) any Administrative, Priority or Secured Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Administrative, Priority or Secured Claim was not timely or properly filed.

1.27 *Disputed Administrative, Priority and Secured Claims Reserve* shall consist of Cash reserved from Distributable Proceeds in the amount of the distribution that would have been made under the Plan in respect of each Disputed Administrative, Priority or Secured

Claim if such Claim was allowed in the amount as filed or if the Claim is estimated pursuant to Section 8.04 of the Plan, to be held in reserve pending the allowance, disallowance, or resolution of such Disputed Administrative, Priority or Secured Claim.

1.28 *Disputed Claims* means Disputed Administrative, Priority and Secured Claims and Disputed General Unsecured Claims.

1.29 *Disputed Claims Reserve* means the Disputed Administrative, Priority and Secured Claims Reserve and the Disputed General Unsecured Claims Reserve.

1.30 *Disputed General Unsecured Claims* means any General Unsecured Claim (a) which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or by an order of the Bankruptcy Court, (b) which is disputed under the Plan, (c) as to which the Debtor has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, or sections 8.02 and 8.04 of the Plan, which objection and/or request for estimation has not been withdrawn or determined by Final Order, (d) any General Unsecured Claim, proof of which was filed in an amount greater than the amount reflected for such General Unsecured Claim on the Schedules and for which the time to file an objection has not yet expired, (e) any General Unsecured Claim, proof of which was filed but which was not listed on the Schedules and for which the time to file an objection has not yet expired, and (f) any General Unsecured Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of General Unsecured Claim was not timely or properly filed.

1.31 *Disputed General Unsecured Claims Reserve* shall consist of Cash reserved by the Debtor from the Distributable Proceeds in the amount of the distribution that would have been made under the Plan in respect of each Disputed General Unsecured Claim, if such Claim was allowed as a General Unsecured Claim in the amount as filed or if the Claim is estimated pursuant to Section 8.04 of the Plan, plus the amounts that would be distributed in respect of all potential rejection claims pursuant to Section 9.01 hereof to be held in reserve, pending the allowance, disallowance, or resolution of such Disputed General Unsecured Claim.

1.32 *Distributable Proceeds* means (i) all the proceeds received by the Debtor in connection with the closing of the Sale to the Purchaser, and (ii) all the Debtor's additional cash, whenever received, derived from, among other things, the assets excluded from the Sale to the Purchaser and any recovery in connection with any Avoidance Action, *provided, however,* that the Distributable Proceeds shall not include the proceeds of the debtor-in-possession financing facility provided by the Comité.

1.33 *Effective Date* means the first Business Day on which all conditions precedent to the Effective Date specified in Section 10.01 of the Plan shall have been satisfied or waived as provided in Section 10.02 of the Plan.

1.34 *Equity Interests* means the interest of any holder of an equity security of the Debtor represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in the Debtor, whether or not

5

transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest. For the avoidance of doubt, the Comité is the 100% shareholder of the Debtor and, therefore, holds 100% of the equity interests in the Debtor.

1.35    *Fee Claim* means an Administrative Claim under sections 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date.

1.36    *Final DIP Order* means the *Final Order (I) Granting Emergency Motion For Order Under 11 U.S.C. §§ 105, 364(c)(1), (2) and (3) and 364(e), Fed. R. Bankr. P. 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-3, (II) Authorizing Debtor to Obtain Postpetition Financing on Superpriority and Secured Basis, and (III) Granting Final Relief,* entered by the Bankruptcy Court on May 13, 2010, and any extensions, amendments, additions or other modifications thereto.

1.37    *Final Order* means an order which has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending; *provided, however*, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

1.38    *General Bar Date* means July 26, 2010, the deadline by which all proofs of Claim (other than Administrative Claims and Government Claims) must have been filed, as established by the Amended Order Setting Claims Bar Date entered by the Bankruptcy Court on April 22, 2010.

1.39    *General Unsecured Claim* means any unsecured, non-priority Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim.

1.40    *Government Claims* means any Claim asserted by a governmental unit.

1.41    *Governmental Unit Bar Date* means October 12, 2010, the deadline by which Governmental Claims must have been filed, as established by the Amended Order Setting Claims Bar Date entered by the Bankruptcy Court on April 22, 2010.

1.42    *Loan Servicing Agent* means OOCI, as agent under the Loan Servicing Agreement.

1.43    *Loan Servicing Agreement* means that certain loan servicing agreement entered on April 21, 2005 between the County, OOCI, and New York Chocolate.

1.44    *Net Distributable Proceeds* means the remaining Cash available, generated from the Sale, after all expenditures are made pursuant to the payment of all Allowed Priority Claims under Sections 502(i) and 507(a) of the Bankruptcy Code, Allowed Administrative Claims under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, the

Allowed Secured Claims, including the Allowed County Secured Claim, and the DIP Loan Claim.

1.45    *OOCI* means Operation Oswego County, Inc.

1.46    *Person* means an individual, partnership, corporation, cooperative, trust, unincorporated organization, association, joint venture or a government or agency or political subdivision thereof.

1.47    *Petition Date* means April 14, 2010.

1.48    *Plan* means this chapter 11 plan of liquidation for the Debtor, and all exhibits, supplements, and schedules to the Plan, as the same may be amended, modified or supplemented.

1.49    *Plan Supplement* means the supplement to the Plan containing certain documents relevant to the implementation of such Plan or the treatment of Allowed Claims and Equity Interests thereunder. The Plan Supplement will be filed with the Bankruptcy Court no later than 10 days before the Confirmation Hearing.

1.50    *Priority Claims* means the Priority Tax Claims and the Priority Non-Tax Claims.

1.51    *Priority Non-Tax Claim* means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.52    *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.53    *Professional* means (i) any professional employed in this Chapter 11 Case pursuant to section 327 or 328 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with this Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.54    *Purchaser* means the winning bidders at the Sale Auction.

1.55    *Ratable Proportion* means a proportionate share, so that the ratio of (a) the amount of property distributed to the holder of an Allowed Claim or Equity Interest, or allocated to the Disputed Claims Reserve on behalf of a holder of a Disputed Claim, in a Class, to (b) the amount distributed to the holders of all Allowed Claims or Equity Interests, or allocated to the Disputed Claims Reserve on behalf of all holders of Disputed Claims, in such Class, is the same as the ratio (x) such Claim or Equity Interest bears to (y) the total amount of all Claims (including Disputed Claims) or Equity Claims in such Class.

1.56    *Releasees* means (i) the officers of the Debtor but only to the extent appointed on or after November 24, 2008, namely Mike Malash, Patrick Haney and Richard F. McCormick, (ii) the directors of the Debtor but only to the extent appointed on or after

November 20, 2008, namely Illa Ginette Donwahi, Léa Claudine Yapobi, N'Guessan Célestin and Atsé Kouassi Propser, and (iii) the Comité, and each of their respective agents, employees, advisors (including any attorneys, financial advisors, and other professionals retained by such persons or entities in connection with this Chapter 11 Case), affiliates and representatives.

1.57    *Responsible Person* means the person designated in Section 7.01(a) of this Plan.

1.58    *Sale* means the sale of the Debtor's assets conducted pursuant to the Sale Motion.

1.59    *Sale Auction* means the auction conducted on June 30, 2010 pursuant to the Sale Motion.

1.60    *Sale Motion* means the *Debtor's Motion to (I) Establish Bid and Sale Procedures, Under 11 U.S.C. §§ 105(a), 363(b), (f) and (m), 365, 1146(a), and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006, for the Sale Free and Clear of Liens, Claims, Encumbrances and Interests of Substantially All of Debtor's Assets; (II) Schedule a Hearing on the Approval of the Sale; (III) Approve the Form and Manner of Notice of the Sale, and (IV) Authorize Procedures With Respect to the Assumption and Assignment of Designated Contracts* filed on April 26, 2010.

1.61    *Schedules* means the schedules of assets and liabilities, the list of holders of Equity Interests, and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications to such schedules, lists, and statements through the Confirmation Date.

1.62    *Secured Claim* means a Claim that is validly secured by a lien on property in which the estate has an interest, or that is subject to a set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the estate's interest in such property or to the extent of the amount subject to a set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of a set-off, pursuant to section 553 of the Bankruptcy Code.

1.63    *Subsequent Distribution Date* means, following the Effective Date, a date which shall occur at the end of each subsequent month period, or more frequently as may be determined by the Debtor in consultation with the U.S. Trustee.

1.64    *Tax Code* means title 26 of the United States Code, as amended from time to time.

1.65    *Treasury Regulations* means final, temporary and proposed regulations promulgated by the United States Treasury Department in respect of the Tax Code.

1.66    *U.S. Trustee* means the Office of the United States Trustee, authorized to monitor and administer chapter 11 cases filed under the Bankruptcy Code.

8

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, FEE CLAIMS AND DIP LOAN CLAIM

2.01    *Administrative Claims in General.*  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Administrative Claim against the Debtor agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive Cash in an amount equal to such Claim out of the Distributable Proceeds.  Any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claim Bar Date shall be automatically disallowed without the need for any objection from the Debtor or any action by the Bankruptcy Court.

2.02    *Priority Tax Claims.*  On the Effective Date, or as soon thereafter as is reasonably practicable, pursuant to section 1129(a)(9) of the Bankruptcy Code, unless otherwise agreed to by the holder of an Allowed Priority Tax Claim and the Debtor, each holder of an Allowed Priority Tax Claim shall be paid in full, in Cash, in an amount equal to such Allowed Priority Tax Claim out of the Distributable Proceeds.

2.03    *Fee Claims.*  Each professional person or firm retained with approval by order of the Bankruptcy Court or requesting compensation in this Chapter 11 Case pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code, with the exception of any ordinary course professionals retained by the Debtor pursuant to an order of the Court, shall be required to file an application for an allowance of final compensation and reimbursement of expenses in this Chapter 11 Case incurred through the Confirmation Date on or before a date to be set in the notice of a hearing for approval of final fee applications by the Bankruptcy Court in the Confirmation Order, which shall be no later than twenty (20) days after the Confirmation Date. Objections to any such application shall be filed on or before a date to be set by the Bankruptcy Court in the Confirmation Order.

2.04    *DIP Loan Claim.*  On the Effective Date, or as soon thereafter as is reasonable practicable, except to the extent that the holder of the DIP Loan Claim against the Debtor agrees to a different treatment, the holder of the DIP Loan Claim shall receive Cash in an amount equal to such Claim out of the Distributable Proceeds.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Debtor.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, Fee Claims and the DIP Loan Claim have not been classified, and are accorded treatment as set forth in Article II.  Except as set forth above, all Claims and Equity Interests are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

3.01    Plan Classes:

| Class 1 | Class 1 consists of all Secured Claims against the Debtor. For the avoidance of doubt, Class 1 includes the Allowed County Secured Claim. |
| Class 2 | Class 2 consists of all Priority Non-Tax Claims against the Debtor. |
| Class 3 | Class 3 consists of all General Unsecured Claims against the Debtor. |
| Class 4 | Class 4 consists of all Equity Interests in the Debtor. |

## ARTICLE IV

## IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

4.01    *Unimpaired Classes of Claims.*  Classes described in this Section are not impaired under the Plan:

Class 1 (Secured Claims)

Class 2 (Priority Non-Tax Claims)

4.02    *Impaired Classes of Claims and Equity Interests.*  Classes described in this Section are impaired under the Plan:

Class 3 (General Unsecured Claims)

Class 4 (Equity Interests)

## ARTICLE V

## TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS

5.01    *Class I (Secured Claims).*

(a)    Impairment; Voting.  Class 1 is unimpaired by the Plan. Each holder of an Allowed Secured Claim in Class 1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, or as soon thereafter as is reasonably practicable, unless otherwise agreed to by the holder of an Allowed Secured Claim in Class 1, each holder of an Allowed Secured Claim shall receive in full satisfaction of such Claim, Cash in an amount equal to such Allowed Secured Claim out of the Distributable Proceeds.

(c)    Retention of Lien.  Any liens held by holders of an Allowed Secured Claim shall be extinguished upon receiving payment in satisfaction of such Claim.

NYK 1308048-8.085280.0011

5.02    *Class 2 (Priority Non-Tax Claims)*

(a)    Impairment; Voting. Class 2 is unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in Class 2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    Treatment. On the Effective Date, or as soon thereafter as is reasonably practicable, unless otherwise agreed to by the holder of an Allowed Priority Non-Tax Claim in Class 2, each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, Cash in an amount equal to such Allowed Priority Non-Tax Claim out of the Distributable Proceeds.

5.03    *Class 3 (General Unsecured Claims)*

(a)    Impairment; Voting. Class 3 is impaired by the Plan. Each General Unsecured Creditor in Class 3 with an Allowed Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment. On the Effective Date, or as soon thereafter as is reasonably practicable, unless otherwise agreed to by the holder of an Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim in Class 3 shall receive in full satisfaction of such Claim, Cash in an amount equal to its *pro rata* Allowed General Unsecured Claim out of the Net Distributable Proceeds up to the Allowed amount of such creditor's Claim.

5.04    *Class 4 (Equity Interests)*

(a)    Impairment; Voting. Class 4 is impaired by the Plan. Each holder of an Equity Interest is entitled to vote to accept or reject the Plan.

(b)    Treatment. On the Effective Date, or as soon thereafter as is reasonably practicable, unless otherwise agreed to by the holder of an Equity Interest, each holder of an Equity Interest in Class 4 shall receive in full satisfaction of such Equity Interest, Cash in an amount equal to its *pro rata* Equity Interest out of the Net Distributable Proceeds remaining after payment of the Allowed Class 3 Claims.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.01    *Disbursing Agent.* The Disbursing Agent shall distribute all Cash or other property to be disbursed under the Plan. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The Disbursing Agent shall not be required to give any bond, surety, or other security for the performance of its duties.

6.02     *Record Date for Distributions.* As of the General Bar Date or Governmental Bar Date, as applicable, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtor or its respective agents shall be deemed closed for distribution purposes, and there shall be no further changes made to reflect any new record holders of any Claims or Equity Interests. The Debtor shall have no obligations to recognize any transfer of Claims or Equity Interests occurring on or after such date.

6.03     *Date of Distributions.* Unless otherwise provided herein, any distributions and deliveries to be made hereunder by the Disbursing Agent to the holders of Allowed Claims and Equity Interests shall be made on the Effective Date or as soon thereafter as is reasonably practicable.

6.04     *Subsequent Distributions.*

(a)     *Distributions from the Disputed Administrative, Priority and Secured Claims Reserve and the Disputed General Unsecured Claim Reserve.* After the Effective Date, to the extent Cash is available from (i) the Disputed Claims Reserves following the disallowance or reduction of any Disputed Administrative, Priority, Secured or General Unsecured Claim, as applicable, or (ii) undeliverable, time-barred or unclaimed distributions to holders of Allowed Administrative, Priority, Secured and General Unsecured Claims, as applicable, the Disbursing Agent shall, on each Subsequent Distribution Date, allocate on a *pro rata* basis such Cash among the holders of Allowed General Unsecured Claims that were Allowed on the Effective Date or subsequently have become Allowed on or before such Subsequent Distribution Date up to the Allowed amount of such Claims and, thereafter, among the holders of Allowed Equity Interests that were Allowed on the Effective Date or subsequently have become Allowed on or before such Subsequent Distribution Date.

(b)     The Cash and other property allocated to pending Disputed Claims retained in the Disputed Claims Reserves shall be administered in accordance with Article VIII below. In no event shall the Disbursing Agent be obligated to make a distribution if, in the reasonable business judgment of the Disbursing Agent, the amount then on hand and the ultimate distribution to be made would not be justified, taking into account all of the attendant costs of such distribution. In such case, any undistributed amount may be held over to the next Subsequent Distribution Date.

6.05     *Distributions of Cash.* Any payment of Cash pursuant to the Plan may be made either by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.06     *Allocations After Effective Date.* Allocations made after the Effective Date to the Disputed Claims Reserve for the benefit of the holders of Disputed Claims that later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.07     *Delivery of Distributions and Undeliverable Distributions.* Distributions to holders of the Allowed County Secured Claim shall be made to the Loan Servicing Agent for distribution to the County under the terms of the County Loan Agreement and the Loan Servicing Agreement. Distributions to holders of all other Allowed Claims or Equity Interests shall be made at the address of each such holder as set forth on the Schedules filed with the

12

Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of claim filed by a holder of an Allowed Claim, or (b) in another writing notifying the Disbursing Agent (at the address set forth in the Plan) of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then-current address within forty-five (45) days of such distribution. After the forty-five (45) days period described in the preceding sentence, such Claim holder's rights to such distribution shall be forfeited and expunged. All claims to the undeliverable distributions shall be made on or before the earlier of (i) with respect to the initial distributions made on or after the Effective Date, forty-five (45) days after the date such initial undeliverable distribution was made, or (ii) with respect to the distributions made on a Subsequent Distribution Date, forty-five (45) days after the date such undeliverable distribution was made. If a distribution cannot be made to the holder of an Allowed Administrative, Priority, Secured or General Unsecured Claim, as applicable, as described above, any such holder's Claim shall be expunged and such undelivered Distributions shall be paid on a *pro rata* basis to holders of Allowed General Unsecured Claims up to the Allowed amount of such Claims and, thereafter, to the holders of Allowed Equity Interests.

6.08     *Compliance With Tax Requirements.*  In connection with the Plan, to the extent applicable, the Disbursing Agent (as applicable), in making distributions under the Plan, shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Disbursing Agent may withhold the entire distribution due to any holder of an Allowed Claim or Equity Interest until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Disbursing Agent, as applicable, to the appropriate authority. If the holder of an Allowed Claim or Equity Interest fails to provide the information necessary to comply with any withholding requirements of any governmental unit within forty-five (45) days from the date of first notification to the Person in need for such information or fails to comply with any applicable withholding requirements, then the holder's distribution shall be treated as an undeliverable distribution in accordance with this Article VI.

6.09     *Time Bar to Cash Payments.*  Checks issued by the Disbursing Agent in respect of Allowed Claims and Equity Interests shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof and the Debtor's obligations related to such funds shall be deemed satisfied and discharged after such sixty (60) day period. According to the Plan, distributions relating to the voided checks payable to holders of Allowed Administrative, Priority, Secured or General Unsecured Claims, as applicable, shall be paid on a *pro rata* basis to holders of the Allowed General Unsecured Claims up to the Allowed amount of such Claims and, thereafter, to the holders of Allowed Equity Interests.

6.10     *Setoffs.*  The Debtor shall, in accordance with section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtor may hold against the holder of such Allowed Claim; *provided, however,* that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may

possess against such holder; and *provided further, however*, that any claims of the Debtor arising before the Petition Date shall first be setoff against Claims against the Debtor (or any successor thereto) arising before the Petition Date.

Notwithstanding anything contained herein to the contrary, in the event that a claimant in an action brought by the Debtor (i) is required by a Final Order to make payment to the Debtor (the "Judgment Amount"), and (ii) has an Allowed right of setoff under section 553 of the Bankruptcy Code or applicable non-bankruptcy law, then the Judgment Amount shall be offset against any amount such claimant owes to the Debtor.

6.11    *Professional Fees and Expenses.*  Each professional person or firm retained with approval by order of the Bankruptcy Court or requesting compensation in this Chapter 1 1 Case pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code, with the exception of any ordinary course professionals retained by the Debtor pursuant to an order of the Court, shall be required to file an application for an allowance of final compensation and reimbursement of expenses in this Chapter 11 Case incurred through the Confirmation Date on or before a date to be set in the notice of a hearing for approval of final fee applications by the Bankruptcy Court in the Confirmation Order, which shall be no later than twenty (20) days after the Confirmation Date.  Objections to any such application shall be filed on or before a date to be set by the Bankruptcy Court in the Confirmation Order.

6.12    *Transactions on Business Days.*  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

6.13    *Minimum Distributions.*  If a distribution to be made to or on behalf of a holder of a Claim or Equity Interest on or after the Effective Date or any Subsequent Distribution Date would be $25 or less in the aggregate, notwithstanding any contrary provision of the Plan, no such distribution will be made to or on behalf of such holder.  Any undistributed amount shall be held over to the next Subsequent Distribution Date.

6.14    *Allocation of Distributions.*  Except to the extent otherwise provided for in the County Loan Agreement for the holders of the Allowed County Secured Claim, distributions to any holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## ARTICLE VII

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

7.01    *Continued Existence of Debtor.*

(a)    From and after the Effective Date, the Debtor shall continue in existence (and shall consult with the U.S. Trustee) for the purpose of (i) winding up its affairs as expeditiously as reasonably possible; (ii) liquidation, by conversion to cash or other methods, of

14

any remaining assets of the estate, as expeditiously as reasonably possible; (iii) enforcing and prosecuting claims, Avoidance Actions, interests, rights and privileges of the Debtor, (iv) resolving Disputed Claims; (v) administrating this Plan; and (vi) filing the Debtor's 2009 and 2010 tax returns. From and after the Effective Date, Pat Haney (or his successor) will be the Responsible Person for the Debtor (and all bylaws, articles or certificates of incorporation, and related corporate documents are deemed amended by this Plan to permit and authorize such sole appointment) and will serve in such capacity to the earlier of the date the Debtor is dissolved in accordance with section 7.01(d) of this Plan and the date the Responsible Person resigns, is terminated or otherwise unable to serve; *provided, however*, that in the event that the Responsible Person resigns, is terminated (with or without cause), then the Debtor, in consultation with the U.S. Trustee, shall have the right to select the Responsible Person's successor who shall be appointed as the new Responsible Person and shall serve in such capacity. Upon distribution of all the Debtor's assets and when the Plan is fully administered, the Debtor shall be deemed dissolved.

(b)    The Responsible Person shall receive a fee equal to $6,600.00 per month until the Debtor's bankruptcy case is fully administered and closed.

(c)    After the Effective Date, the Responsible Person is empowered, on behalf of the Debtor, to (i) serve as the sole officer and director of the Debtor; (ii) take all steps, and execute all instruments and documents necessary to effectuate the disbursements to be made under this Plan; (iii) cause the Disbursing Agent to make distributions contemplated by this Plan; (iv) comply with this Plan and the obligations thereunder; (v) employ, retain and replace professionals to represent him with respect to his responsibilities or otherwise effectuate this Plan; and (vi) exercise such other powers as may be vested in him pursuant to order of the Bankruptcy Court or pursuant to this Plan, or as he may reasonably deem necessary and proper to carry out the provisions of this Plan.

(d)    Upon the distribution of all assets of the Debtor's estate pursuant to this Plan and the filing by or on behalf of the Debtor of a certification to that effect in the Bankruptcy Court, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or any further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith. After the Effective Date, the Debtor shall not be required to file any document, or take any other action, to withdraw its business operation from any area in which the Debtor was previously conducting its business.

7.02    *Reserve Accounts for Disputed Claims.* On and after the Effective Date, the Debtor, in consultation with the U.S. Trustee, shall allocate to the Disputed Claims Reserves: (i) Cash in an aggregate amount sufficient to pay to each holder of a Disputed General Unsecured Claim, Disputed Priority Claim, Disputed Secured Claim and Disputed Administrative Claim the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date; (ii) net earnings on such Cash; and (iii) any other property distributed in respect of such beneficial interests in the Debtor. All Cash and Cash equivalents and earnings thereon shall be used to satisfy any expenses incurred in connection with the maintenance of the Disputed Claims Reserves.

7.03 *Funding Expenses Post-Confirmation.* Upon the Effective Date, the Debtor's estate will be funded with proceeds from the Sale and the Cash generated by the liquidation of the Debtor's remaining assets, if any. The Debtor shall make appropriate reserves to allow for the payment of the Responsible Person after the Effective Date.

7.04 *Administration of Taxes.* After the Effective Date, the Debtor shall exercise all powers regarding the Debtor's tax matters, including filing tax returns. The Debtor shall be solely responsible to (i) complete and file the Debtor's federal, state and local tax returns; (ii) request an expedited determination of any unpaid tax liability of the Debtor under section 505(b) of the Bankruptcy Code for all tax periods of the Debtor ending after the Petition Date through the liquidation of the Debtor, as determined under applicable tax laws; and (iii) represent the interest and account of the Debtor before any taxing authority in all matters including, but not limited to, any action, suit, proceeding or audit.

7.05 *Corporate Action.* Upon the Effective Date, the Debtor shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefore.

7.06 *Effectuating Documents and Further Transactions.* The Responsible Person is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

7.07 *Closing of the Chapter 11 Case.* When the Debtor's estate has been fully administered and the Plan has been substantially consummated, the Debtor may seek authority from the Bankruptcy Court to close this Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VIII

## <u>PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS</u>

8.01 *No Distribution Pending Allowance.* Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim. Until such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall hold such property in the appropriate Disputed Claims Reserve in accordance with Article VI. If any Disputed Claims are disallowed, the Cash held in the Disputed Claims Reserve shall be released as and to the extent the Debtor determine such property is no longer necessary to fund unresolved Disputed Claims, and such Cash shall be distributed in accordance with Article VI hereof.

8.02 *Resolution of Disputed Claims.* Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtor, by and through its counsel, shall have the right, to the exclusion of all others, to make and file objections to Claims against the Debtor and shall serve a copy of each objection upon the holder of the Claim to which the objection is made and on the U.S. Trustee as soon as practicable, but in no event later than 10 days after the

Effective Date. All objections shall be litigated to a Final Order except to the extent the Debtor elects to withdraw any such objection or the Debtor and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim. Any such settlement resulting in an Allowed Claim against the Debtor in excess of $10,000 shall require approval of the Bankruptcy Court. The U.S. Trustee shall be given three business days notice of any proposed settlement of a Claim. If the U.S. Trustee does not object in writing by the close of business of the third business day after receipt of the notice of proposed settlement, the settlement may be finalized. If an objection is received, and if the parties cannot resolve their differences within a reasonable amount of time, any such settlement, including those for $10,000 or less, shall require approval of the Bankruptcy Court.

8.03    *Assistance with Resolution of Disputed Claims.* The Debtor's representatives, including the Responsible Person for so long has he is engaged by the Debtor, shall assist the Debtor with the process of resolving the Disputed Claims filed against the Debtor's estate.

8.04    *Estimation.* The Debtor may request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

8.05    *Allowance of Disputed Claims.* If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, on the Subsequent Distribution Date following the date on which the Claim becomes an Allowed Claim, distribute from the appropriate Disputed Claims Reserve to the holder of such Allowed Claim (i) Cash in an aggregate amount sufficient to pay to each holder of a Disputed Claim the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date, reduced by (ii) a Cash amount equal to such Claim's proportionate share of all expenses of the Disputed Claims Reserve, including without limitation, any taxes imposed by any governmental unit with respect to income generated by or attributable to property held in the Disputed Claims Reserve (including any outstanding tax advances) and reasonable reserves.

NYK 1308048-8.085280.0011

# ARTICLE IX

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.01    *Generally.* Except as otherwise provided in Section 9.02 of the Plan, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between the Debtor and any person shall be deemed rejected by the Debtor on the Effective Date (with such rejection effective as of the Confirmation Date), except for any executory contract and unexpired lease:

(a)    which has been assumed, assumed and assigned, or rejected, as applicable, pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date; *or*

(b)    as to which a motion for approval of the assumption, assumption and assignment, or rejection, as applicable, of such contract or lease has been filed and/or served prior to the Confirmation Date.

9.02    *Approval of Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases.* The occurrence of the Effective Date shall constitute, as of the Confirmation Date, the approval, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, of the assumption and assignment, or rejection, as applicable, of the executory contracts and unexpired leases assumed and assigned, or rejected pursuant to Article IX of the Plan.

9.03    *Claims for Damages.* Notwithstanding the prior orders establishing the deadlines for filing Claims against the Debtor, Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan shall be filed and served on the Debtor or the Disbursing Agent, pursuant to the procedures specified in the Confirmation Order, no later than 20 days after the entry of the Confirmation Order. Any Claims not filed within such time will be forever barred from assertion against the Debtor, its estate, successors or properties. All Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plan. Objections to any such Claims shall be filed no later than thirty (30) days after such Claim is filed and served, and the Bankruptcy Court shall determine any such objections. If the Bankruptcy Court overrules any timely objection to such Claim, then that Claim, to the extent Allowed, shall be classified as an Allowed General Unsecured Claim and paid in accordance with the provisions of the Plan on the later of (i) the next Subsequent Distribution Date and (ii) ten (10) business days after the Claim has been Allowed by a Final Order.

# ARTICLE X

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

10.01   *Conditions Precedent to Effective Date of Plan.* The occurrence of the Effective Date of this Plan is subject to satisfaction of the following conditions precedent:

(a)    Confirmation Order. The Clerk of the Bankruptcy Court shall have entered the Confirmation Order and there shall be no stay of the Confirmation Order in effect.

18

(b)     Execution and Delivery of Other Documents.  All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan, including without limitation, the documents comprising the Plan Supplement that are necessary for the effectuation of the Plan, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

10.02  *Waiver of Conditions Precedent.*  The conditions precedent in Section 10.01 of the Plan may be waived, in whole or in part, by the Debtor.  Any such waivers of a condition precedent in Section 10.01 of the Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

10.03  *Effect of Failure of Conditions.*  In the event that the conditions specified in Section 10.01 have not been satisfied or waived in the manner provided in Section 10.02 on or before 30 days after the Confirmation Date, then upon written notification filed by the Debtor with the Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, (d) the time within which the Debtor may assume, assume and assign, or reject all prepetition executory contracts and unexpired leases shall be extended for a period of 30 days after the date the Confirmation Order is vacated and (e) all the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

## ARTICLE XI

## EFFECTS OF CONFIRMATION

11.01  *Binding Effect.*  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

11.02  *Term of Injunctions or Stays.*  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

11.03  *Rights of Action.*  Except as otherwise provided elsewhere in the Plan, on and after the Effective Date, the Responsible Person will have the exclusive right to enforce any and all present or future rights, claims or causes of action of the Debtor against any Person and rights of the Debtor that arose before or after the Effective Date, including, but not limited to, the Avoidance Actions.  In consultation with the U.S. Trustee, the Responsible Person may pursue, abandon, settle or release any or all such rights of action, without the need to obtain approval or

any other or further relief from the Bankruptcy Court. The Responsible Person may, in consultation with the U.S. Trustee, offset any such claim held against a person against any payment due to such person under the Plan.

11.04 *Injunction.* On and after the Confirmation Date, all Persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of the Debtor for which the Responsible Person, after the Effective Date, retains sole and exclusive authority to pursue in accordance with the Plan. Notwithstanding anything contained in this section, on or after the Effective Date, the Responsible Person retains the rights to object to Claims as provided in Sections 8.02 and 8.04 of the Plan and pursue rights of action as outlined in Section 11.03.

## ARTICLE XII

## RELEASES

12.01 *Release of Releasees by Debtor.* Each of the Releasees shall be deemed released by the Debtor from any and all claims, debts, obligations, rights, suits, damages, judgments, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of Effective Date or thereafter arising, in law, at equity, or otherwise (except for (i) willful misconduct and (ii) gross negligence) that the Debtor would have been legally entitled to assert in its own right (whether individually or collectively) or that any holder of a Claim or Equity Interest or other person or entity would have been able to assert on behalf of the Debtor, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence, related to the Debtor, taking place on or before the Effective Date.

12.02 *Release of Released Parties.* In consideration for the distributions received under the Plan, all holders of Claims or Equity Interests, and any other claimant who has asserted Claims against any of the Releasees and/or the Debtor on or before the Effective Date, shall be deemed to have released, remised and forever discharged: (a) the Debtor and its current agents or employees, attorneys, advisors, successors and assigns of the foregoing; and (b) the Releasees, and any person or entity claimed to be liable derivatively through any of the foregoing (such parties described in the preceding clauses (a) and (b) above, collectively, the "Released Parties") of and from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, promises, damages, claims and liabilities whatsoever, known or unknown, arising from a Claim or based upon the same subject matter as a Claim or Equity Interest and existing on the Petition Date or which thereafter could arise based on any fact, transaction, cause, matter or thing which occurred prior to the Petition Date. Subject to sections 524 and 1141 of the Bankruptcy Code, the releases described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties. Except as provided above, any person accepting any distribution pursuant to the Plan and any person who has asserted Claims against any of the Releasees and/or the Debtor on or before the Effective Date shall be presumed conclusively to have released the Released Parties from any cause of action arising from or based on the same subject matter as the Claim or Equity Interest. The release described in the preceding sentence shall be enforceable as a matter of contract. The releases

20

described herein are in addition to, and not in lieu of, any other release separately given, conditionally or unconditionally, by the Debtor to any other person or entity.

## ARTICLE XIII

## RETENTION OF JURISDICTION

Until the Chapter 11 Case is closed by entry of a final decree pursuant to Bankruptcy Rule 3022, the Bankruptcy Court will retain jurisdiction over all matters arising out of or relating to the Chapter 11 Case, including jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest and to determine and resolve any objections to the allowance or priority of Claims or Equity Interests;

(b)     Determine requests for payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code;

(c)     Determine other requests for payment of Administrative Claims, Secured Claims, Priority Tax Claims and Priority Non-Tax Claims;

(d)     Hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code for periods ending on or before the Effective Date;

(e)     Determine any motions pending on the Confirmation Date for the rejection, assumption or assignment of executory contracts and unexpired leases and the allowance of any Claim allegedly resulting therefrom;

(f)     Recover all assets of the Debtor and property of the Debtor's estate, wherever located;

(g)     Ensure that distributions to holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

(h)     Determine or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications and motions involving the Debtor that may be pending in the Bankruptcy Court on or initiated after the Confirmation Date;

(i)     Enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

(j)     Determine such other matters and such other purposes as the Confirmation Order may provide;

(k)     Issue such orders as may be necessary or appropriate to implement, execute, and consummate the Plan and all contracts, instruments, releases, and other agreements

or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(l)     Hear and resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, implementation, enforcement or interpretation of the Plan, whether by the Debtor, or otherwise, or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or related documents;

(m)     To hear and determine any litigation commenced by the Responsible Person and to hear any disputes after the Effective Date in connection with any actions that may be taken under the Plan, including to adjust the recoveries that the holder of a Claim against or, Equity Interest in, the Debtor may otherwise be entitled to receive under the Plan;

(n)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(o)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(p)     Hear and determine Avoidance Actions by the Debtor (whether commenced before or after the Effective Date) on behalf of the Debtor's estate;

(q)     Hear and determine matters under sections 346, 505 and 1146 of the Bankruptcy Code with respect to any tax, fine, penalty or addition to tax, including determinations regarding any tax liability arising in connection with the liquidation of assets of the estate pursuant to the Plan (including any request for expedited determination pursuant to section 505(b) of the Bankruptcy Code) filed, or to be filed, with respect to the returns for any and all taxable periods ending after the Petition Date through the closing of the Chapter 11 Case;

(r)     Enter an order establishing Bar Dates in respect of any Claims for which Bar Dates have not been established as of the Confirmation Date;

(s)     Determine compromises and settlements of Claims against the Debtor or the estate;

(t)     Determine all questions and disputes regarding title to the assets of the Debtor and its estate;

(u)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or distributions pursuant to the Plan are enjoined or stayed;

(v)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order; and

(w)     Enter an order or final decree closing the Chapter 11 Case.

## ARTICLE XIV

## ADDITIONAL PROVISIONS

14.01   *Effectuating Documents and Further Transactions.*  The Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan.

14.02   *Director Action.*  Prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the directors of the Debtor or their successors in interest under the Plan, including, without limitation (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company structure of the Debtor or other action to be taken by or required of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable state law without any requirement of further action by the directors of the Debtor.

14.03   *Exemption from Transfer Taxes.*  Pursuant to section 1146(a) of the Bankruptcy Code (i) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or (ii) the making or assignment of any lease or sublease, or (iii) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, any restructuring, disposition, liquidation, or dissolution, deeds, bills of sale, transfers of tangible property will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales or use tax, or other similar tax.

14.04   *Voting of Claims and Equity Interests.*  Each holder of an Allowed Claim or Equity Interest in an impaired Class of Claims or Equity Interests that is receiving a distribution pursuant to the Plan shall be entitled to vote to accept or reject the Plan as provided in the order approving the Disclosure Statement.

14.05   *Nonconsensual Confirmation.*  If any impaired Class does not accept the Plan by the requisite statutory majorities provided in sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired Class is deemed to have rejected the Plan, the Debtor reserves the right (a) to undertake to have the Bankruptcy Court confirm the Plan under

section 1129(b) of the Bankruptcy Code or (b) to amend the Plan in accordance with Article X of the Plan as necessary to obtain entry of the Confirmation Order.

14.06 *Exculpation.* The Debtor and the Comité, and where applicable, their respective current officers, directors, employees and agents (including any attorneys, financial advisors, investment bankers and other professionals retained by such Persons) shall have no liability to any holder of any Claim or Equity Interest or any other Person for any act or omission in connection with, or arising out of, the Chapter 11 Case, the Disclosure Statement, the Plan, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by a final court order and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

14.07 *Post-Confirmation Date Fees and Expenses.* Except as set forth below, after the Confirmation Date, the reasonable fees and expenses of the professional persons employed by the Debtor in connection with the implementation and consummation of the Plan, including in connection with the Avoidance Actions, and any other matters as to which such professionals may be engaged shall be paid. The fees and expenses of such professionals shall be subject to the approval of the Bankruptcy Court until the Effective Date of the Plan, and thereafter the professionals of the Debtor's estate will deliver invoices to the Responsible Person with notice to the U.S. Trustee. If within three business days, the U.S. Trustee does not object in writing, the fees can be paid. If the U.S. Trustee timely objects and the parties cannot reach agreement on the amount of fees to be paid, the dispute will be determined by the Bankruptcy Court.

14.08 *Fee Claims.* Professionals or other entities asserting Fee Claims shall file and serve on the Debtor and such other entities that are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, applications for final allowance of such Fee Claims no later than twenty (20) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications within the time period set forth in this Section shall be forever barred from asserting such Claims against the Debtor's estate and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claim shall be filed and served on the Debtor and the party requesting payment of a Fee Claim on a date to be specified in the notice of hearing for approval of final fee applications. To the extent necessary, entry of the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Allowed Fee Claims.

14.09 *Professional Fee Holdback.* On or as soon as reasonably practicable after the Effective Date and entry of an order of the Bankruptcy Court authorizing the Debtor to pay to Professionals their Fee Claims for all outstanding amounts relating to prior periods through the Confirmation Date, the Debtor shall pay such amounts to such Professionals in accordance with such order. On the Effective Date, the Debtor shall reserve an amount equal to the aggregate amount of outstanding fee applications not ruled upon by the Bankruptcy Court as of the Effective Date, plus the aggregate amount of all actual and estimated fees and expenses due for periods that have not been billed through the Confirmation Date and an estimate of the fees and

24

expenses that will be due through the projected Effective Date. Such reserves shall be used to pay the remaining Fee Claims owing to the Professionals as and when Allowed by the Bankruptcy Court. When all Fee Claims have been paid in full, any remaining reserved amounts in the reserve account established under this section of the Plan shall be Distributable Proceeds and distributed in accordance with the Plan.

14.10 *Payment of Statutory Fees.* All fees under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

14.11 *Amendments or Modifications of Plan.* The Debtor reserves the right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of an Allowed Claim that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

14.12 *Effect of Withdrawal or Revocation.* If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claim by or against, or any Equity Interest in, the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

14.13 *Severability of Plan Provisions.* If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.14 *Successors and Assigns.* The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests and their respective successors and assigns.

14.15 *Notices.* Any notice required or permitted under the Plan shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly

given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following parties:

*If to the Debtor:*

NEW YORK CHOCOLATE & CONFECTIONS COMPANY
555 South Fourth Street
Fulton, New York 13069
Telephone: (315) 598-1234
Facsimile: (315) 598-1246
Attn: Pat Haney

*with copy to:*

McDERMOTT WILL & EMERY LLP
Counsel for the Debtor and Debtor in Possession
340 Madison Avenue
New York, New York 10173-1922
Telephone: (212) 547-5400
Facsimile: (212) 547-5400
Attn: Geoffrey T. Raicht, Esq. and Nava Hazan, Esq.

14.16 *Governing Law.* Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under the Plan and any agreements, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

14.17 *Tax Reporting and Compliance.* The Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions under the Plan shall be subject to any such withholding and reporting requirements.

14.18 *Filing of Additional Documents.* On or before substantial consummation of the Plan, the Debtor shall file such agreements and other documents, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.19 *Rules of Interpretation and Computation of Time.* For purposes of the Plan, unless otherwise provided in the Plan (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (iv) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (v) all references in the Plan to Sections, Articles, and schedules

NYK 1308048-8.085280.0011

are references to Sections, Articles, and schedules of or to the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (viii) in computing any period of time prescribed or allowed by the Plan, Bankruptcy Rule 9006(a) will apply.

14.20 *Conflict of Terms.* In the event of a conflict between the terms of this Plan and the Disclosure Statement, the terms of this Plan shall govern.

Dated: New York, New York
July 6, 2010

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

By: /s/ Geoffrey T. Raicht
Geoffrey T. Raicht
Bar No. 2916203
Nava Hazan
Bar No. 3064409
340 Madison Avenue
New York, New York 10173-1922
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Counsel for the Debtor and Debtor in Possession*

NYK 1308048-8.085280.0011